**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| EDWARD HENRIES, | : | Civil No. 05-5013(SDW) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | June 9, 2008 |
| Respondent. | : | |
| | : | |

**APPEARANCES:**

> EDWARD HENRIES, #23638-050
> L.S.C.I. Allenwood
> P.O. Box 1000
> White Deer, PA 17887
> Petitioner Pro Se

> CHRISTOPHER J. KELLY, Assistant U.S. Attorney
> UNITED STATES ATTORNEY FOR DISTRICT OF NEW JERSEY
> 970 Broad Street
> Newark, New Jersey  07102
> Attorneys for Respondent

**WIGENTON**, District Judge

Edward Henries ("Petitioner"), a federal prisoner who is presently confined at Allenwood

Federal Penitentiary, filed a Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct a

280-month sentence entered in this Court on February 3, 2003.  The United States filed an

Answer.  Petitioner filed a Reply and applications for a stay and an evidentiary hearing.  For the

reasons expressed below, the Court denies the stay, denies the evidentiary hearing, denies relief

under § 2255, and declines to issue a certificate of appealability.

## I.  BACKGROUND

On November 11, 2000, the United States filed a criminal complaint against Edward Henries, Walter Collier, Jermine Crawford and Fnu Lnu, charging them with conspiracy to distribute and to possess with intent to distribute more than 100 grams of heroin, contrary to 21 U.S.C. §§ 841 and 846.  See United States v. Henries, 00-mj-3257 (SRC) (D.N.J. filed Nov. 11, 2000).  Pursuant to an arrest warrant issued by then United States Magistrate Judge Stanley R. Chesler on November 12, 2000, federal law enforcement authorities arrested Petitioner on November 17, 2000.  On that date, Petitioner appeared before Judge Chesler who scheduled a detention hearing.  On November 29, 2000, Judge Chesler set Petitioner's bail at $1,000,000 bond secured by cash/surety or property.

On December 7, 2000, a grand jury issued an indictment charging Petitioner with conspiracy to distribute and to possess with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846.  See United States v. Henries, Crim. No. 00-0788 (JCL) indictment (D.N.J. Dec. 7, 2000).  On December 18, 2000, Petitioner appeared before United States District Judge John C. Lifland for arraignment and entered a plea of not guilty. Petitioner was released on bond on December 28, 2000.  Id.

On February 1, 2002, the United States filed a superseding indictment charging Petitioner with one count of conspiracy to distribute and to possess with intent to distribute more than 100 grams of heroin from March 8, 2000, through September 14, 2000, see 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841 (b)(1)(C), 846, one count of distribution and possession with intent to distribute heroin on June 27, 2000, see 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 18 U.S.C. § 2, and one count of distribution of heroin on September 14, 2000, see 21 U.S.C. § 841(a)(1),

841(b)(1)(C) and 18 U.S.C. § 2.  On February 8, 2002, Petitioner pled not guilty to the superseding indictment.

Trial by jury commenced on September 18, 2002, before Judge Lifland.  On October 3, 2002, the jury found Petitioner guilty on all three counts.  According to the Verdict Sheet, the jury determined that the United States proved beyond a reasonable doubt that the conspiracy involved more than 100 grams of heroin and an unspecified quantity of cocaine.

The Probation Department prepared a Presentence Investigation Report.  Based on Petitioner's felony conviction of third-degree possession with intent to distribute a controlled dangerous substance, entered in the Superior Court of New Jersey on January 11, 1991, and his conviction of two counts of second-degree aggravated manslaughter and two counts of fourth-degree aggravated assault, entered in the Superior Court of New Jersey on July 29, 1998, the report indicated that Henry qualified for sentencing as a career offender, within the meaning of United States Sentencing Guideline § 4B1.1.  The Presentence Investigation Report calculated Petitioner's guideline range as 262 to 327 months imprisonment, with a statutory maximum term of 80 years.  According to the Addendum to the Presentence Report dated January 13, 2003, Petitioner raised two objections to the report: (1) the four-point enhancement for an aggravating role is not warranted because Petitioner did not manage, organize or lead five or more persons in the illegal activity; and (2) the career offender enhancement is not warranted because the third-degree conviction for possession with intent to distribute occurred in January 1991, which is beyond 10 years prior to the current conviction.  The addendum responded to the first objection, indicating that Petitioner was the leader of the conspiracy which involved Sean Jermine Crawford, Michael McAllister, three co-conspirators who were dead, and another person who

3

was in custody; in any event, the addendum stated that the Court's ruling on this issue would not

impact the sentence, since the range of 262 to 327 months would remain the same, due to the

career offender enhancement.  The addendum rejected the second objection on the ground that

Petitioner's first state felony conviction was entered on January 11, 1991, the instant offense

began March 8, 2000, and Sentencing Guideline 4A1.2(e)(2) provides that any prior sentence that

was imposed within 10 years of the commencement of the instant offense is counted.  On January

31, 2003, Judge Lifland denied Petitioner's objections to the Presentence Investigation Report

and sentenced Petitioner to an aggregate 280-month term of imprisonment.  See United States v.

Henries, Crim. No. 00-0788 (JCL) judgment (D.N.J. Jan. 31, 2003).

Petitioner appealed to the United States Court of Appeals for the Third Circuit.  Petitioner

raised the following grounds in his brief:

> Point I: MR. HENRIES IS ENTITLED TO A NEW TRIAL
> BECAUSE OF THE GOVERNMENT'S IMPROPER USE OF
> IMMUNIZED STATEMENTS.
>
> > A.  The District Court Allowed The Government to Violate
> > The Plain Terms of its Own Proffer Agreement.
> >
> > B.  The Improper Admission of the Pre-trial Statements
> > Caused Mr. Henries Substantial Prejudice.
> >
> > C.  The Court's Late Jury Instruction Did Not Cure The
> > Unfair Prejudice That Resulted From The Improper
> > Admission Of Mr. Henries' Immunized Statements.
>
> Point II: THE GOVERNMENT'S VIOLATION OF FED. R.
> CRIM. PRO. 16 EXACERBATED ITS BREACH OF THE
> PROFFER AGREEMENT AND ALSO REQUIRES THAT A
> NEW TRIAL BE GRANTED.
>
> Point III: APPELLANT HENRIES WAS ENTITLED TO A
> MISSING WITNESS INSTRUCTION.

Point IV: THE COURT ERRED WHEN IT ALLOWED THE
GOVERNMENT TO INTRODUCE OTHER ACT EVIDENCE
THAT HAD NO DISCERNIBLE APPROPRIATE BASES FOR
ITS ADMISSION.

A.  Admission Of Evidence Seized From Manor Drive Had
Unfair Prejudicial Impact That Outweighed Its Probative
Value.

United States v. Henries, C.A. No. 03-1367 brief, table of contents (3d Cir. Oct. 9, 2003).

On May 24, 2004, the United States Court of Appeals for the Third Circuit affirmed the

conviction.  See United States v. Henries, Docket No. 03-1367 opinion (3d Cir. May 24, 2004).

The Court, assuming, *arguendo*, that both the proffer agreement and Rule 16 were violated, and

that the introduction during the government's direct case of evidence obtained from the proffer

session was improper, affirmed the conviction because the errors were harmless, given the other

overwhelming evidence against Petitioner.  Id.  On July 15, 2004, the Court of Appeals denied

Henries' petition for rehearing *en banc*.  See United States v. Henries, C.A. No. 03-1367 order

(3d Cir. July 15, 2004).

On February 18, 2005, Petitioner filed a letter request asking Judge Lifland to order the

government to give him a copy of the grand jury transcripts to establish pursuant to § 2255 that

the government wrongly secured his indictment.  On March 3, 2005, Petitioner filed a motion in

this Court for appointment of counsel to represent him in a § 2255 motion because he needs an

attorney to show that when he was arrested, he had an oral agreement with the government that

led to his cooperation at the time of the arrest, and to raise other issues.  By Order filed June 3,

2005, Judge Lifland denied the requests.

5

Petitioner executed the motion to vacate presently before this Court on October 6, 2005. The Clerk received it on October 13, 2005. The § 2255 motion challenges Petitioner's sentence on five grounds:

> Ground One: VIOLATION OF SIXTH AMENDMENT, WHEN THE COURT RELY ON THE PRESENTENCE REPORT TO SENTENCE DEF. AS A CAREER OFFENDER.
>
> Ground Two: INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> Ground Three: BREACH OF ORAL AGREEMENT BY THE U.S. ATTORNEY SHERRY HENDERSON HUTCHINSON & AGENT.
>
> Ground Four: THE COURT ERRED IN APPLYING THE SENTENCING GUIDELINES TO DEFENDANT.
>
> Ground Five: VIOLATIONS OF FOURTH AMENDMENT.

(Pet. ¶ 12 & addendum.)

By Order entered November 23, 2005, Judge Lifland advised Petitioner of his rights under United States v. Miller, 197 F. 3d 644 (3d Cir. 1999). On January 11, 2006, Petitioner asked Judge Lifland to consider his claims as presented. Judge Lifland ordered Respondents to file an answer and the record. On April 10, 2006, the government filed an Answer, accompanied by several exhibits. On July 31, 2006, Petitioner filed a Reply to the Answer. On September 5, 2006, Petitioner filed a letter requesting a stay of this Court's decision pending an evidentiary hearing. (Letter dated Aug. 30, 2006, docket entry #10.) Petitioner states:

> How could Hon. Judge Stanley Chesler issue[] a warrant on November 11, 2000 when November 17, 2000 was the first time the government presented the court with the criminal complaint. As the court is aware of, a warrant cannot be issued without a probable cause showing through a complaint.

Hon. John C. Lifland there are too many discrepancies and misleading information that the court has in its possession that without a hearing conducted and expanding the record, the government would have succeeded in lying and misleading this Honorable court.  The court may also be making a decision on forgery documents committed by someone other than the petitioner.

The "so called" warrant that was produced by the government does not have November 11, 2000 as the issuing of the warrant, as the docket entry indicates.  November 12, 2000, is the date that has been put on the "so called" warrant.  (See Exhibit of warrant) The warrant also has petitioner [being] arrested on November 17, 2000 which the court knows to be absolutely wrong.  Just too many discrepancies to be called clerical errors.

(Letter dated Aug. 30, 2006, docket entry #10.)

On March 30, 2007, Chief Judge Garrett E. Brown, Jr., reassigned this case to the undersigned.

## II.  DISCUSSION

Under 28 U.S.C. § 2255, a federal court may vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255, ¶ 1.  An evidentiary hearing is not required under § 2255 where "the motion and files and records of the [underlying criminal] case show conclusively that the movant is not entitled to relief."  United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992); see also 28 U.S.C. § 2255 Rule 4(b).

A.  Procedural Default

The Court may not consider the merits of the grounds under § 2255 without first addressing the government's contention that Petitioner is procedurally barred from seeking habeas relief because he did not raise his claims before the trial court or present them to the United States Court of Appeals for the Third Circuit on direct appeal.

"Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'"  Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting Reed v. Farley, 512 U.S. 339, 354 (1994) and Sunal v. Large, 332 U.S. 174, 178 (1947) ).  "It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  United States v. Frady, 456 U.S. 152, 165 (1982) (quoting United States v. Addonizio, 442 U.S. 178, 184 (1979)).  "Thus, a prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim."  Withrow v. Williams, 507 U.S. 680, 721 (1993) (Scalia, J., concurring in part and dissenting in part).  "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."  Massaro v. United States, 538 U.S. 500, 504 (2003).

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual prejudice, or that he is 'actually innocent.'" [1] Bousley, 523 U.S. at 622

---

[1] The Supreme Court held in Massaro v. United States, 538 U.S. 500, 504 (2003), that an ineffective assistance of counsel claim may be brought in a collateral motion under § 2255, whether or not the petitioner could have raised the claim on direct appeal.  The United States Court of Appeals for the Third Circuit has held that the failure to raise a Sentencing Guidelines

(continued...)

(citations and internal quotation marks omitted); see also Frady, 456 U.S. at 167; United States v. Pelullo, 399 F. 3d 197, 220 (3d Cir. 2005) ("the proper standard of review for collateral attacks on trial errors . . . is the 'cause and prejudice' standard") (citation omitted); United States v. Sanders, 165 F. 3d 248 (3d Cir. 1999).  Under that standard, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  Frady, 456 U.S. at 167-68.  To establish "cause" for procedural default, a defendant must show that "some objective factor external to the defense impeded counsel's efforts' to raise the claim."  McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  "Examples of external impediments which have been found to constitute cause in the procedural default context include interference by officials, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and ineffective assistance of counsel."  Pelullo, 399 F. 3d at 223 (citations and internal quotation marks omitted).  "[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time."  Bousley, 523 U.S. at 623 (citation and internal quotation marks omitted).  In addition, a  procedural default caused by counsel's tactical decision, ignorance of the law or facts, or inadvertence that is short of constitutional ineffectiveness is binding on the habeas petitioner.  See Murray, 477 U.S. at 485-87.  "Where the basis for a . . . claim is available, and other defense counsel have perceived and litigated that

---

[1](...continued)
issue on direct appeal results in a procedural default of that issue.  See United States v. Essig, 10 F. 3d 968, 977 (3d Cir. 1993).

9

claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default."  Engle v. Isaac, 456 U.S. 107, 134 (1982).

Here, Petitioner argues that counsel was constitutionally ineffective in failing to raise his claims before Judge Lifland and on direct appeal.  While a successful showing of ineffective assistance of counsel may satisfy the "cause" prong of a procedural default inquiry, it can only do so if the ineffectiveness rises to the level of a constitutional deprivation under Strickland v. Washington, 466 U.S. 668 (1984).  See Coleman, 501 U.S. at 753.  However, if Petitioner's claims are not meritorious, then Petitioner cannot successfully argue that counsel's failure to raise them on direct appeal was ineffective.  See United States v. Mannino, 212 F. 3d 835, 840 (3d Cir. 2000).  This Court will review Petitioner's claims to determine whether they have merit.

B.  Career Offender Enhancement

Petitioner argues in Ground One that Judge Lifland erred by sentencing him as a "career offender" because neither of the cited New Jersey felonies could be counted under the career offender sentencing guideline.  Petitioner does not dispute that he was convicted on January 11, 1991, in the Superior Court of New Jersey, Essex County, of third-degree possession with intent to distribute a controlled dangerous substance (on October 28, 1990) and that he was sentenced to two years probation and fines.  However, he contends that this conviction does not count toward "career offender" status because it is not a felony (as defined by the guideline) in that it was not punishable by a term of imprisonment under N.J. STAT. ANN. § 2C:44-1(e), which provides for a presumption against imprisonment for a first-time offender convicted of a third-degree crime.  Nor does Petitioner dispute his conviction on July 29, 1998, in the Superior Court of New Jersey (pursuant to a guilty plea after the Appellate Division granted a new trial, see State

10

v. Henries, 306 N.J. Super. 512 (App. Div. 1997)) of two counts of fourth-degree aggravated assault and two counts of second-degree aggravated manslaughter.  Petitioner argues that the 1998 conviction does not constitute a crime of violence under the relevant definition, since when he entered his guilty plea, he did not provide the factual basis for the manslaughter or aggravated assault convictions.

The applicable sentencing guideline for a "career offender" provides in relevant part:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a) (2000).

Section 4B1.2 defines the terms used in § 4B1.1 as follows:

> (a) the term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that -
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
>
> (b) The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

11

> (c) The term "two prior felony convictions" means (1) the
> defendant committed the instant offense of conviction subsequent
> to sustaining at least two felony convictions of either a crime of
> violence or a controlled substance offense . . . , and (2) the
> sentences for at least two of the aforementioned felony convictions
> are counted separately under the provisions of § 4A1.1(a), (b), or
> (c).  The date that a defendant sustained a conviction shall be the
> date that the guilt of the defendant has been established, whether
> by guilty plea, trial, or plea of nolo contendere.

U.S. SENTENCING GUIDELINES MANUAL § 4B1.2 (2000).

Application Note 1 defines "prior felony conviction" in relevant part as follows:

> "Prior felony conviction" means a prior adult federal or state
> conviction for an offense punishable by death or imprisonment for
> a term exceeding one year, regardless of whether such offense is
> specifically designated as a felony and regardless of the actual
> sentence imposed.

U.S. SENTENCING GUIDELINES MANUAL § 4B1.2, Application Note 1.

(1) Is Petitioner's conviction of third-degree possession with intent to distribute a controlled dangerous substance on January 11, 1991, a prior felony conviction of a controlled substance offense under § 4B1.1?

Petitioner contends that his January 11, 1991, conviction of third-degree possession with intent to distribute a controlled dangerous substance is not a "felony" as defined by the Career Offender Guideline because N.J. STAT. ANN. § 2C:44-1(e) provides that a first-time offender convicted of a third-degree crime is entitled to a presumption against imprisonment.  Petitioner argues that, since he was a first-time offender, the conviction was not a "felony" because it was not "punishable by . . . a term exceeding one year," as required by § 4B1.2.

Petitioner is correct that N.J. STAT. ANN. § 2C:44-1(e) provides for a presumption against imprisonment for first-time offenders such as Petitioner:

12

> The court shall deal with a person convicted of an offense other than a crime of the first or second degree, who has not previously been convicted of an offense, without imposing sentence of imprisonment, unless, having regard to the nature and circumstances of the offense and the history, character and condition of the defendant, it is of the opinion that his imprisonment is necessary for the protection of the public under the criteria set forth in [N.J. STAT. ANN. § 2C:44-1(a)].

N.J. STAT. ANN. § 2C:44-1(e).

However, as the New Jersey Supreme Court clarified in State v. Gardner, 113 N.J. 510, 517-18 (1989), section 2C:44-1(e) provides that the presumption can be overcome where imprisonment is necessary for the protection of the public. In that case, a third-degree crime is punishable by a three to five-year term of imprisonment. Id. The court explained:

> [B]efore the presumption against imprisonment of a first offender who pleads guilty to a crime of the third degree may be overcome, the sentencing court must be persuaded by a standard that is higher than "clear and convincing" evidence that incarceration is necessary. And once the presumption has been overcome, the defendant *must* be sentenced according to the statutory guidelines . . . . For a third-degree offense, that would entail a prison term ranging from three to five years, N.J.S.A. 2C:43-6(a)(3), with a presumptive term of four years. N.J.S.A. 2C:44-1(f)(1)(d).

Id. at pp. 517-18 (emphasis in original) (citation omitted).

Relying on Gardner, the United States Court of Appeals determined in United States v. Minnick, 949 F. 2d 8, 9-10 (1st Cir. 1991), that under New Jersey law, a first offense conviction of a third-degree crime is "punishable by imprisonment for a term exceeding one year" because a three to five-year prison sentence could be imposed for a first-time conviction of a third-degree crime in New Jersey under N.J. STAT. ANN. § 2C:44-1(e).

13

This Court holds that because a New Jersey court could impose a three to five-year term of imprisonment on a first-time conviction for a third-degree offense, see N.J. STAT. ANN. §§ 2C:44-1(e), 2C:43-6(a)(3); Gardner, 113 N.J. at 517-18, Petitioner's 1991 conviction of third-degree possession of a controlled dangerous substance was a prior felony conviction of a controlled substance offense within the meaning of the Career Offender Guideline §§ 4B1.1 and 4B1.2. Accordingly, Petitioner's counsel was not constitutionally ineffective in failing to challenge Petitioner's "career offender" status on this basis.

(2) Is Petitioner's conviction of fourth-degree aggravated assault or second-degree aggravated manslaughter on July 29, 1998, pursuant to his guilty plea, a prior felony conviction of a crime of violence under § 4B1.1?

Relying on Shepard v. United States, 544 U.S. 13 (2005), Petitioner argues that his 1998 convictions for second-degree aggravated manslaughter and fourth-degree aggravated assault do not constitute "crimes of violence" under §§ 4B1.1(a) and 4B1.2(a)(1) because, at the time he entered his guilty plea, Petitioner did not provide the factual basis for these crimes. As the government contends, Petitioner's reliance on Shepard is misplaced. The Shepard Court held that a federal court sentencing a defendant under the Armed Career Criminal Act (which mandates a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies, where burglary is a violent felony only if committed in a building or enclosed space) could not determine on the basis of a guilty plea alone that Shepard's Massachusetts conviction for burglary qualified under the Act because Massachusetts defined burglary more broadly than the Act.

Here, Petitioner was convicted of aggravated manslaughter and aggravated assault based on his guilty plea in 1998. Whatever Petitioner said during the plea colloquy, these convictions

14

qualify as "crimes of violence" under the Career Offender Guideline because Petitioner pled

guilty to them and Application Note 1 of § 4B1.2 expressly states that "crime of violence"

includes a conviction for "manslaughter" and "aggravated assault." [2]   Accordingly, Petitioner's

counsel was not constitutionally ineffective in failing to argue that his 1998 conviction did not

constitute a "crime of violence" under the Career Offender Guideline.

C.  Drug Quantity and Sentence

In Ground Four, Petitioner asserts that Judge Lifland misapplied the Sentencing

Guidelines by increasing Petitioner's term of imprisonment on the basis of drug quantity, which

was not found by the jury beyond a reasonable doubt.  As the government contends, this claim is

without merit because the verdict sheet establishes that the jury determined beyond a reasonable

doubt that the conspiracy involved more than 100 grams of heroin.  See United States v. Henries,

Crim. No. 00-0788 (JCL) verdict sheet (D.N.J. Oct. 3, 2002).  Accordingly, Petitioner's counsel

was not constitutionally ineffective in failing to raise this claim.

---

[2] Application Note 1 provides:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.  Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives . . . or, by its nature, presented a serious potential risk of physical injury to another.

U.S. SENTENCING GUIDELINES MANUAL § 4B1.2, Application Note 1.

D.  Government's Breach of Oral Agreement

In Ground Three, Petitioner asserts that the government breached an oral agreement the

assistant United States Attorney and Gary Adler, an FBI agent, made with him on the date he was

arrested.  As factual support, Petitioner states in the Petition:

> When defendant was arrested he agreed pursuant to an oral
> agreement with gov. attorney Sherry Henderson & agent Gary
> Adler to cooperate in arresting his supplier (Danny Paulino).  Part
> of the oral agreement that were breached by gov. attorney was the
> government agree[d] not to let Danny Paulino know that defendant
> was the one that set him up to get arrested. (Defendant fear[ed] for
> his life and family so he did not want Danny to find out he got him
> arrested.)  Attorney Sherry agree[d] not to let Danny Paulino know
> this.  She breach[ed] this agreement when she let Mr. Paulino
> know defendant was the one that got him arrested.  Mrs.
> Hutchinson also agreed to not argue against defendant obtaining a
> bail if defendant agree[d] to cooperate and set up his supplier.
> Again the government breach[ed] the agreement when she argue[d]
> against defendant getting a bail.  As stated, the government
> attorney stated [at the initial appearance before Judge Chesler] that
> her boss had disagaree[d] with the agreement she had with
> defendant and his attorney.  Because of the breach of this oral
> agreement the government should not have been allow[ed] to use
> the cooperation of defendant it its case.  Danny Paulino should not
> have been used, because Def. set Danny up to get arrested pursuant
> to the agreement that he would not be allowed to know defendant
> was the one got him arrested . . .
>
> Defendant ask that the court set aside his conviction due to the
> breach of the government oral agreement with defendant.
> Defendant also ask that, to assist the court defendant plead the
> court to conduct a hearing what oral agreement did defendant have
> with the government.  Also for the court to obtain the transcripts
> from defendant appearance in front Hon. Magistrate Stanley
> Chesler to assist the court and help defendant argument that a oral
> agreement existed with the government.  There's a lot of evidence
> that can be brought up during a court order hearing.

(Pet. Ground Three, Supporting Facts.)

16

The government argues that, even if such an oral agreement existed, the alleged breach of the agreement had no effect on Petitioner's conviction. The government contends that Petitioner suffered no harm as a result of the alleged oral agreement not to tell Paulino that Petitioner had set him up, and that, since Judge Chesler granted Petitioner bail, no harm resulted from the government's breach of an oral agreement not to oppose bail. In response, Petitioner argues:

> The government showed bias towards Petitioner by breaching the oral agreement and presenting Mr. Paulino in its case by having him testify about his past dealings with petitioner and their phone calls together. In addition to Mr. Paulino's testimony, the government also used the petitioner's cooperation statements against the petitioner, which was clearly the most damaging evidence to the petitioner's case.
>
> Petitioner respectfully ask[s] this court to please conduct a hearing to determine if there was an oral agreement, when and where was the written proffer agreement executed and was it before or after petitioner cooperation.

(Reply, p. 12.)

This Court sees no reason to conduct an evidentiary hearing on whether the government breached a promise not to oppose bail (since Petitioner was released on bail) or whether the government breached a promise not to inform Paulino that Petitioner had set Danny Paulino up.[3] Understandably, Petitioner is not pleased that the government, if it did indeed let Paulino know that Petitioner was the one who had set Paulino up, gave Paulino a motive to improve his own situation by making a deal with the government and testifying against Petitioner.[4] Obviously, if

---

[3] This Court makes no finding that the government informed Caceres-Paulino that Petitioner had set him up.

[4] This Court observes that Daniel Alfredo Caceres-Paulino ("Paulino") was arrested November 16, 2000. See United States v. Caceres-Paulino, Crim. No. 01-0248 (JCL) (D.N.J.
(continued...)

17

Petitioner had known that the government was going to use the evidence provided by Petitioner to obtain Paulino's cooperation in convicting Petitioner, Petitioner would not have given Paulino up.

     This claim is similar to the claim Petitioner raised on direct appeal wherein Petitioner argued that the government breached a proffer agreement with Petitioner not to use evidence obtained from Petitioner in a proffer session against Petitioner by presenting the testimony of Agent Thompson.  The Court of Appeals noted that, under the terms of the proffer agreement, Thompson should not have testified at Petitioner's trial that during the proffer session, Petitioner revealed the workings of his narcotics distribution network and identified Paulino as his supplier. See United States v. Henries, C.A. No. 03-1367 opinion, p. 5 (3d Cir. May 24, 2004).  Although the Court of Appeals indicated that the government should be scrupulous in fulfilling its agreements, the court found the error in admitting Thompson's testimony harmless because "(1) the proffer-derived evidence against Henries was in part cumulative of other properly admitted evidence; and (2) the (other) evidence against Henries was overwhelming."

     Assuming (without deciding) that the government breached an oral agreement not to tell Paulino that Petitioner had set Paulino up, and assuming (without deciding) that the appropriate remedy for this breach was the exclusion of Paulino's testimony, this Court finds that the failure to exclude Paulino's testimony was harmless.  Paulino was not the only co-conspirator who

------

[4](...continued)
filed April 16, 2001).  On April 16, 2001, he pled guilty to a one count information pursuant to a plea agreement.  Id.  On October 15, 2002, Judge Lifland granted the government's motion for a downward departure pursuant to § 5K1.1 of the Sentencing Guidelines for substantial cooperation and sentenced Caceres-Paulino to time served and five years of supervised release. Id.

testified against Petitioner, as the jury also heard testimony from co-conspirators Jackson and

Crawford; officials had discovered other evidence (beyond the information provided by

Petitioner) indicating that Paulino was Henries's supplier; and the government presented video

and audio tapes of Petitioner's participation in drug deals on June 27, 2000, and September 14,

2000.  As the Court of Appeals found:

> In sum, the audiotapes and videotapes, combined with perfectly
> dovetailing narrations by Jackson and Crawford, implicate Henries
> in the conspiracy, even if they never directly capture him doing
> something illegal.  Henries's recorded conversations with Paulino
> (during Henries's cooperation with the government) make it clear
> that the two had a preexisting course of business - and indeed . . .
> each had the other's phone number in his phone directory.
> Circumstantially, it seems clear that Henries is the head of the
> conspiracy.

United States v. Henries, C.A. No. 03-1367 opinion, p. 8 (3d Cir. May 24, 2004).

This Court finds that, even if the government breached a promise not to inform Paulino

that Petitioner had set him up, this had no effect on the outcome of Petitioner's criminal case.

Accordingly, Petitioner's counsel was not ineffective in failing to raise this issue.

E.  Fourth Amendment

Petitioner argues in Ground Five that the government violated his rights under the Fourth

Amendment by arresting him without a valid criminal complaint showing the existence of

probable cause and without a valid arrest warrant.  As factual support, Petitioner asserts:  "By

violating defendant['s] rights, through an illegal arrest, defendant was coerced into providing

information to the government, which le[]d to his conviction.  Without these information, the

government would not have been able to obtain a conviction.  Defendant and individuals that are

19

associated with the court have sought to get a copy of his arrest warrant, but there is none."  (Pet., Ground Five, Supporting Facts.)

The government argues that the record establishes that Judge Chesler signed an arrest warrant prior to Petitioner's arrest and that, even if Petitioner's Fourth Amendment rights were violated, the illegal arrest does not void Petitioner's conviction or require the exclusion of evidence.

The docket in Petitioner's criminal case shows that on November 11, 2000, the government filed a criminal complaint against Petitioner.  On November 12, 2000, Judge Chesler issued a warrant for Petitioner's arrest based on the facts set forth in the complaint.  The warrant indicates that Petitioner was arrested by the FBI on November 17, 2000.  Because the criminal complaint established probable cause to believe that Petitioner had committed the offense of conspiring to distribute and to possess with the intent to distribute more than 100 grams of heroin, contrary to 21 U.S.C. §§ 841(a)(1) and 846, Petitioner's arrest complied with the Fourth Amendment and the Fourth Amendment does not require the exclusion of evidence obtained from the arrest.[5]  See Virginia v. Moore, 128 S. Ct. 1598, 1607, 1608 (2008) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the 'Fourth Amendment . . . .  That amendment does not require the exclusion of evidence obtained from a constitutionally

[5] Petitioner is correct that November 11, 2000, was a Saturday.  However, Rule 77(a) of the Federal Rules of Civil Procedure provides that "[e]very district court is considered always open for filing any paper, issuing and returning process, making a motion, or entering an order." Fed. R. Civ. P. 77(a).  Petitioner is also correct that the docket in his criminal case indicates that the arrest warrant issued on November 11, 2000, but the warrant itself shows that Judge Chesler signed it on November 12, 2000.  Such a mistake on the docket is not a basis to vacate the conviction.

20

permissible arrest") (citation and internal quotation marks omitted).  As Petitioner's arrest was constitutional, counsel was not constitutionally ineffective in failing to challenge the arrest.

In sum, because Petitioner has not shown that counsel was constitutionally ineffective, that any external impediment prevented counsel from raising the present claims, or that he is actually innocent, his § 2255 claims are barred by his double procedural default.  Furthermore, this Court finds that Petitioner's claims are without merit.  This Court denies the § 2255 motion without an evidentiary hearing as the Motion, Answer, Reply and records in the underlying criminal case show conclusively that Petitioner is not entitled to relief.

F.  Certificate of Appealability

Because Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c).  <u>See</u> Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## III.  CONCLUSION

For the foregoing reasons, the Court denies the Motion to vacate, set aside or correct the sentence under 28 U.S.C. §§ 2255, denies the request for an evidentiary hearing and a stay, and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).


**S/SUSAN D. WIGENTON, U.S.D.J.**